IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HUNTER NANCE, Individually and )
by and through his parents, )
DONNA NANCE and RODNEY NANCE, )
                              )
        Plaintiffs,           )    1:17cv957
                              )
        v.                    )
                              )
ROWAN-SALISBURY BOARD OF      )
EDUCATION and (each           )
individually and in their     )
official capacity) LYNN P.    )
MOODY, KELLY WITHERS, BRETT   )
STIREWALT, MELISSA MORRIS,    )
ALIYAH SLOOP, AMY WISE,       )
FRANKLIN PRIMUS, LISA         )
RANDOLPH, JONATHAN FARMER,    )
AMIE WILLIAMS CAUDLE, JASON   )
YOW, and  BRANDON LINN,       )
                              )
        Defendants.           )

## **MEMORANDUM ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

This civil action alleges discrimination by school officials against a high school student who was bullied based on his sexual orientation.  Plaintiff Hunter Nance, individually and by and through his parents, Donna and Rodney Nance, sues the Rowan-Salisbury Board of Education ("Board") and the following administrators and staff at South Rowan High School ("SRHS") in the Rowan-Salisbury School District ("RSSD") in their individual and official capacities: Lynn P. Moody, superintendent of RSSD; Kelly Withers, principal of SRHS; Amy Wise, Jonathan Farmer, and

Amie Williams Caudle, assistant principals at SRHS; Brett Stirewalt, Melissa Morris, Aliyah Sloop, and Franklin Primus, teachers at SRHS; Lisa Randolph, a guidance counselor at SRHS; Jason Yow, a coach at SRHS; and Brandon Linn, a school resource officer. (Doc. 15.) Plaintiffs' second amended complaint asserts five causes of action.[1] All Defendants except Linn moved to dismiss various claims. (Doc. 21.) Following a hearing on August 29, 2018, the court ruled on the motion as to all bases (see Doc. 37) except one, which the court now addresses: Plaintiffs' motion to dismiss the fifth cause of action against the Board asserting negligent supervision and training pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 21.) For the reasons set forth below, the motion will be granted.

I. BACKGROUND

The allegations of the complaint, which are accepted as true and viewed in the light most favorable to Plaintiffs for purposes of the present motion, show the following:

Plaintiff Hunter identifies as gay and as a member of the lesbian, gay, bisexual, and transgender ("LGBT") community. (Doc. 15 ¶ 59.) He was enrolled as a student at SRHS and was bullied by

---

[1] The second amended complaint alleges a violation of the Fourteenth Amendment to the U.S. Constitution pursuant to 42 U.S.C. § 1983 (erroneously designed "28 U.S.C. § 1983"), Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent supervision and training.

2

his peers and subjected to gay slurs, threats, and/or acts of physical violence by them from August 2013 until his withdrawal from the school in April 2016. (Id. ¶¶ 60, 63.)

In three instances, students who bullied and/or harassed Hunter were disciplined by SRHS staff. In December 2015, one student punched Hunter in the face while on the school bus returning from a band performance; several students witnessed the incident, no adults were on the bus other than the driver, and the student was made to apologize but faced no disciplinary action. (Id. ¶¶ 100–03.) In March 2016, another student "acted confrontationally" toward Hunter and called Hunter gay slurs; the student was suspended for three days. (Id. ¶ 109.) On April 6, 2016, a student "known to be associated with" the student who uttered gay slurs poured chocolate milk over Hunter's head and called him gay slurs; this student was punished with a ten-day suspension. (Id. ¶¶ 112–16.)

During the period of August 2014 through April 2016, Hunter suffered several other instances of bullying and/or harassment by students. (Id. ¶¶ 62 ("repeatedly pushed into lockers, punched, harassed, and assaulted by students while walking through the halls"), 67 ("multiple occurrences of two students . . . throwing medicine balls at Plaintiff Hunter's face"), 71 (student "made repeated threats"), 79 (student "slapped Plaintiff Hunter multiple times"), 82 ("group of [unidentified] boys chased him through the

3

school"), 89 ("prevented from entering the school cafeteria by another student"), 95 ("student attempted to intimidate Plaintiff Hunter every time he saw him by reminding him that he was [another student's] bodyguard"), 105 (students made "false accusations against Plaintiff Hunter . . . by claiming Plaintiff Hunter made sexual comments while in the band classroom"), 118 (student "yelling gay slurs" as Hunter walked the school hallways), 119 (student followed Hunter to his classes), 122–26 (student "punched the brick wall hard enough to break his hand" as Hunter walked away, which Hunter perceived as a threat), 146 ("Plaintiff Hunter was told by Defendant Yow that a group of four kids were 'looking to beat him up'" but "[Yow] did not intervene . . . or notify the administration or school resource officer").) Hunter and his parents spoke with SRHS teachers and administrators in response to these incidents. (Id. ¶¶ 75, 87, 90–91, 102, 107, 117, 120–21, 138–39.) No additional disciplinary action was taken by Defendants. (Id. ¶¶ 69, 92, 129.)

In January 2014, Hunter attempted suicide and was hospitalized at Novant Presbyterian Pediatric Behavioral Health. (Id. ¶ 64.) SRHS staff was notified of the suicide attempt but "did not address any of the issues that led to the suicide attempt" after Hunter returned to SRHS. (Id. ¶ 66.) In March 2015, Hunter attempted suicide a second time and was observed at Presbyterian Novant Hospital. (Id. ¶ 78.) In May 2015, Hunter attempted

4

suicide a third time and was hospitalized at Novant Pediatric Behavioral Health Unit. (Id. ¶ 96.) During this stay, he was formally diagnosed with PTSD resulting from the bullying he endured while a student at SRHS. (Id. ¶ 97.) Defendant Withers was informed of Hunter's medical placement, stated that she reported "the event" to Moody, but otherwise "did nothing to address or rectify the situation upon Plaintiff Hunter's return." (Id. ¶ 98.)

## II. ANALYSIS

### A. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court first "separates factual allegations from allegations not entitled to the assumption of truth." Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ., 179 F. Supp. 3d 544, 550 (M.D.N.C. 2016). Conclusory allegations and allegations that are simply a "formulaic recitation of the elements" are not entitled to the assumption of truth. Id. (quoting Iqbal, 556 U.S. at 681). The court then determines "whether the factual allegations, which are accepted as true, 'plausibly suggest an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 681). A claim is facially plausible when the

plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable," demonstrating "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

**B. Negligent Supervision and Training Claim**

Plaintiffs' fifth cause of action alleges that, under North Carolina law, Defendants Withers, Moody, Wise, Farmer, Caudle, and the Board were negligent in screening, hiring, training, retaining, supervising, and disciplining their teachers and other school employees. (Doc. 15 ¶ 215.)[2] Plaintiffs cite generally to the following alleged failures: "to properly supervise teachers," "to properly supervise and/or discipline students with respect to discriminatory practices involving LGBT students," "to adhere to [Board] policies and procedures," and "to take appropriate corrective measures." (Doc. 15 ¶ 217.)

The court has previously dismissed Plaintiffs' claims of negligent supervision and training against Defendants Withers, Moody, Wise, Farmer, and Caudle because these Defendants enjoy public official immunity under North Carolina law. (Doc. 37.) What remains for consideration is the Board's argument that

---

[2] The second amended complaint names only Defendants Withers, Moody, and the Board, but counsel argued at the hearing that this claim is intended to be brought against Defendants Wise, Farmer, and Caudle as well.

Plaintiffs' claim against it should be dismissed because Plaintiffs failed to allege incompetence, actual or constructive notice of incompetence, and an injury resulting from incompetency. (Doc. 21 ¶ E.) Plaintiffs argue that they have sufficiently alleged that the Board breached its duty "by fostering an unsafe and injurious environment," "by not taking disciplinary action when incidents of bullying were reported," and "by not intervening when Plaintiff Hunter was being hunted by a group of four students wanting to 'beat him up.'" (Doc. 24 at 17–18.) Plaintiffs allege that "the Board had both actual and constructive knowledge of the incompetence" and "failed to take corrective action." (Id. at 18.)

Claims of negligent supervision and training are "grounded in active negligence by the employer." Davis v. Matroo, No. 5:13-CV-00233-BO, 2013 U.S. Dist. LEXIS 134523, at *12 (E.D.N.C. Sept. 19, 2013) (citing Braswell v. Braswell, 410 S.E.2d 897 (N.C. 1991)). To establish a claim for negligent supervision or training in North Carolina, a plaintiff must prove:

> (1) the specific negligent act on which the claim is founded . . . (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the [employer] of such unfitness or bad habits, or constructive notice, by showing that the [employer] could have known the facts had he used ordinary care in oversight and supervision . . . ; and (4) that the injury complained of resulted from the incompetency proved.

7

Cloaninger v. McDevitt, 555 F.3d 324, 337 (4th Cir. 2009) (quoting Medlin v. Bass, 398 S.E.2d 460, 462 (N.C. 1990)); Sauers, 179 F. Supp. 3d at 556 (citing Davis, 2013 U.S. Dist. LEXIS 134523, at *5). The notice element requires the plaintiff to allege "that prior to the [employee's tortious] act, the employer knew or had reason to know of the employee's incompetency." Cloaninger, 555 F.3d at 337 (quoting Barker v. Kimberly-Clark Corp., 524 S.E.2d 821, 827 (N.C. Ct. App. 2000))(alteration in original).

For the negligent training claim, there are no specific factual allegations in the second amended complaint that the Board was negligent in its training of its employees. Plaintiffs only allege the legal conclusion that the Board had a duty to exercise ordinary and reasonable care in the training of their school employees, and that the Board breached this duty. (Doc. 15 ¶¶ 215-17.) This conclusory allegation is insufficient to permit an inference that the Board is liable for negligent training of its employees.

For the negligent supervision claim, Plaintiffs allege that the Board "had actual and/or constructive knowledge of the incompetence of the individual defendants." (Doc. 15 ¶ 208.) But Plaintiffs' brief cites only to portions of the second amended complaint that allege notice to SRHS officials, not to the Board. (Doc. 24 at 18.) Plaintiffs fail to allege facts permitting a

reasonable inference that the Board knew or should have known of employee incompetence in handling harassment complaints.

First, there are no facts permitting an inference that the Board had actual knowledge of alleged employee incompetence at SRHS. The closest allegation is found in paragraph 99 of the second amended complaint, which alleges that Defendant Withers told Plaintiff Donna Nance that she reported "the event" (presumably Hunter's May 2015 third suicide attempt and hospitalization) to Defendant Moody, the superintendent. (Doc. 15 ¶ 99.) Under North Carolina law, the superintendent is not a member of the school board, but serves as its secretary. See N.C. Gen. Stat. ¶ 115C-41(a). Even presuming that the superintendent would report misfeasance or malfeasance to the Board, this nevertheless fails to plausibly support a claim of negligent supervision, because the report to Defendant Moody was of Plaintiff Hunter's suicide attempt and hospitalization, not of incompetence by SRHS employees. Otherwise, the remaining allegations in the second amended complaint indicate that all reports were to SRHS administrators and teachers, and Plaintiffs have alleged no facts indicating that complaints of alleged harassment were made directly to the Board or that the Board was notified of complaints made about RSSD employees.

Second, Plaintiffs fail to allege facts sufficient to permit an inference that the Board had constructive notice of school

administration incompetence. To show constructive notice, a plaintiff must allege facts suggesting that, "prior to the [employee's tortious] act, the employer . . . had reason to know of the employee's incompetency." Cloaninger, 555 F.3d at 337 (quoting Barker, 524 S.E.2d at 827). Plaintiffs' second amended complaint contains only the conclusory allegations that the Board failed to properly supervise school employees, failed to adhere to the RSSD policies and procedures for reports of bullying, failed to take "appropriate corrective measures to stop known discriminatory practices involving LGBT students," and failed to ensure that school employees followed policies and procedures for identifying and addressing bullying within the school. (Doc. 15 ¶ 217.)

Plaintiffs have failed to allege any facts indicating that, prior to the alleged incidents of incompetence in handling complaints concerning Hunter, the Board had any reason to know of any SRHS employee acting negligently in handling harassment, discrimination, or bullying complaints. Paragraph 42 of the second amended complaint alleges that the RSSD Student Parent Handbook and Code of Conduct states that Level III violations (physical assaults on a student) "must be immediately reported to the Superintendent or the Superintendent's Designee." (Id. ¶¶ 40-42.) Assuming that notice to the superintendent would plausibly support an inference of notice to the Board, there is no allegation that

Moody received any notice of any Level III violation, much less any failure on the part of SRHS administrators and staff. The only notice to Moody alleged was as to Hunter's May 2015 hospitalization, as allegedly reported by Defendant Withers. (Id. ¶ 99.)

Bullying, in contrast, is to be reported under the Code of Conduct to the school principal or assistant principal. (Id. ¶¶ 50–52.) Plaintiffs' allegations that certain incidents were "reported multiple times via the bullying hotline" (id. ¶ 68) fail to allege who, if anyone, received such reports. All other allegations of notice in the second amended complaint relate to various SRHS staff, rather than the Board. (See, e.g., id. ¶¶ 91 ("further communication between the school and the Plaintiffs"), 98 (Defendant Withers notified of Hunter's May 2015 medical placement), 117 (Defendants Randolph and Withers notified about milk incident), 127 ("school administration" questioned student about alleged threat), 139 (events of April 20, 2016 discussed with Defendants Withers), 150 ("Defendant Withers has been notified repeatedly through e-mail as well as in-person communications about the bullying and harassment Plaintiff Hunter experienced by students and faculty").)

Without specific factual allegations that the Board had reason to know of the alleged incompetency of school employees, Plaintiffs have failed to plead facts sufficient to permit an

11

inference of constructive notice to the Board.  See M.H. v. Onslow Cty. Bd. of Educ., No. 7:16-CV-00069-FL, 2016 U.S. Dist. LEXIS 135522, at *10–11 (E.D.N.C. Sept. 30, 2016) (dismissing claim for negligent supervision where no facts suggested that the Board of Education "should have known that school administrators were ill-prepared to handle incidents of harassment and bullying" or had a prior history of acting negligently in handling harassment complaints, even though plaintiff alleged repeated incidents over several years of gender-based bullying that were reported to school administrators resulting in at least seven meetings, but no corrective action).

Therefore, viewing the complaint in the light most favorable to the Plaintiffs and assuming that school employees were negligent in responding to allegations of harassment concerning Plaintiff Hunter, Plaintiffs have failed to allege facts sufficient to maintain a cause of action for negligent supervision and training under North Carolina law.  Because this deficiency might be subject to cure, depending on the facts, the court will dismiss this claim without prejudice.

## III. CONCLUSION

For the reasons set forth above,

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (Doc. 21) as to the Fifth Cause of Action, Negligent Supervision

and Training, is GRANTED as to the Board, and the cause of action is DISMISSED WITHOUT PREJUDICE.

                                                /s/    Thomas D. Schroeder
                                            United States District Judge

September 14, 2018